CHARLES H. MERRILL et al.

*vs.*

ELIAS MILLIKEN.

Waldo.    Opinion December 27, 1905.

*Appeal.   Review.   Exclusion  of  Evidence.   Burden  to  Show  Error.   Harmless
Error.   Contracts.   Action for Breach.   Evidence.*

When evidence is offered by a plaintiff and the same is excluded, it is incum-
bent upon such plaintiff to show affirmatively that he is aggrieved by such
ruling.

When a plaintiff has full opportunity under the rulings of the presiding
Justice to introduce evidence to prove all the allegations respecting the
defendant's liability, but fails to present sufficient evidence to make out a
prima facie case against him, such plaintiff is not aggrieved by the exclu-
sion of evidence, which, even if admissible, would not affect the result of
the case.

The plaintiffs in this action offered in evidence a certain "construction con-
tract," so called, dated May 7, 1898, and under the facts as disclosed by
the case the presiding Justice refused to admit the same. *Held:* that
this ruling was correct.

On exceptions by plaintiffs.    Overruled.

Assumpsit on a written contract made by the plaintiffs and one
I. C. Libby with the defendant, Elias Milliken.    Libby died before
the commencement of the suit, and the action was brought by the
plaintiffs who are the surviving joint contractors.    The defendant
died after the action was brought, and his administrators duly
appeared as parties defendant.    Tried at the September term, 1903,
of the Supreme Judicial Court, Waldo County.    Plea, the general
issue.    During the progress of the trial, the plaintiffs offered certain
evidence which was excluded by the presiding Justice, and at the
conclusion of the testimony the plaintiffs were nonsuited.    There-
upon the plaintiffs excepted to the rulings of the presiding Justice
n excluding the evidence offered by them and also to the order of
nonsuit,

The case sufficiently appears in the opinion.

*Charles F. Johnson, Enoch Foster and Reuel W. Rogers,* for plaintiffs.

*Herbert M. Heath, C. L. Andrews and Wm. P. Thompson,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, JJ.

WHITEHOUSE, J. November 20, 1897, ten individuals, viz. I. C. Libby, A. F. Gerald, G. C. Moses, A. H. Shaw, J. M. Robbins, C. G. Totman, S. A. Nye, E. J. Lawrence, H. B. Goodenough and the defendant Elias Milliken, subscribed to the following agreement, to wit:

1. "They hereby form a syndicate to acquire the franchises and property of the Lewiston & Auburn Horse Railroad Company, the Brunswick Electric Railroad Company, the Bath Street Railway Company, and such extensions as may be agreed to later.

2. "Negotiable paper not to exceed $350,000 at any one time is to be signed and so outstanding at any one time. All notes are to be taken up on or before January 1, 1899.

3. "M. G. Shaw, Elias Milliken and J. M. Robbins, are agreed upon as Trustees hereunder to issue all notes to be negotiated by I. C. Libby hereby agreed to as Treasurer. They shall hold all bonds, securities and valuable papers connected with the purpose hereof.

4. "Said Moses, Gerald and Libby hereby agree to sell and deliver all of the stock of the Brunswick Electric Railroad Company to the syndicate, free of debt, to be equally divided, for the actual cost thereof, not to exceed $35,000. All of the parties hereto shall then be elected Directors of said Brunswick Electric Railroad Company.

5. " Under the direction of said Directors said Brunswick Electric Railroad Company is to extend its road to a connection with the Bath Street Railway Company, and with the Lewiston and Auburn Horse Railroad Company, and the funds hereby raised devoted to that purpose.

6. "The outstanding second mortgage bonds of the Lewiston and Auburn Horse Railroad Company are to be bought from the proceeds of said notes and delivered to the Trustees to be held as before agreed. The proceeds shall also be used in purchasing the power plant used by the said company to be deeded to said Trustees in trust herefor. It is further agreed, however, that said Trustees may acquire said second mortgage bonds by exchange for new bonds, if the holders thereof so require.

7. "Said Gerald, Libby and Moses hereby transfer to the syndicate their present right to acquire the stock of the Bath Street Railway Company at four per cent rental thereon, or in cash $66,667, the option to be exercised within nine months herefrom.

8. "The parties have this day signed and delivered to the Trustees, ten notes of $5,000 each and ten notes of $10,000 dated in blank, the payee blank, the time blank, and when negotiated; the Trustees as our agents are authorized to fill in said blanks, or the Treasurer, with written directions from the Trustees, may so fill in said blanks."

Two days later on the 22nd day of November, 1897, I. C. Libby, C. E. Libby and C. H. Merrill entered into an agreement with the defendant as follows:

"We hereby agree to pay Elias Milliken Five Thousand Dollars and 30 shares of stock for subscribing one tenth in the Lewiston, Brunswick & Bath deal. We are to protect him against loss and he is to give us all incomes or interests this one tenth gives him in the stock of these companies or of any new road or extension that the syndicate formed at Lewiston, Nov. 20th for the purpose of purchasing the three roads, the Lewiston & Auburn, the Brunswick Road and the Bath Road and their extensions, may construct or acquire except one share given him as a director, meaning to stand in his place as far as liability goes and we are to have all benefits accruing from same."

The case at bar was an action of assumpsit to enforce the latter contract against the defendant Milliken and recover one tenth of the income and profit alleged to have been realized by him as a member of the syndicate by virtue of the agreement of November 20 signed

by him.  I. C. Libby, one of the parties to the agreement in suit, having deceased, the action was brought by C. H. Merrill and C. E. Libby the surviving joint contractors of the first part as parties plaintiff, and Milliken having deceased after the commencement of the suit, the administrators on his estate now appear as parties defendant.

It is alleged in the declaration that the enterprise thus inaugurated by the syndicate formed Nov. 20, to acquire and extend certain street railway properties in Lewiston, Brunswick and Bath, was carried to a successful termination, and that profits to the amount of $325,000 accrued therefrom to be shared equally among the ten members of the syndicate; that the plaintiffs in the performance of the agreement on their part, duly protected Milliken against any loss by reason of his becoming a member of the syndicate, delivered to him twenty shares of the stock mentioned in the agreement and had always been ready and willing to deliver to him the remaining ten shares of stock and the $5,000 therein specified.  They accordingly seek to recover in this action $32,500, being one tenth part of the $325,000 alleged to have been realized by the syndicate as the profits of the enterprise.

These averments in the declaration thus obviously involve the direct implication that Milliken fully performed his part of the contract of November 20, and continued a member of the syndicate then organized, until the enterprise was completed.  The plaintiffs' claim necessarily rests upon the assumption that Milliken had substantially observed all of the obligations imposed upon him by the terms of the syndicate agreement, so as to become entitled to receive one tenth of the profits alleged to have been realized from the construction of the "Lewiston, Brunswick and Bath Street Railway."  But it appears from the testimony of one of the plaintiffs' witnesses and is not controverted, that for reasons which will hereafter more fully appear, Milliken never attended any meeting of the syndicate after that of Nov. 20, when it was formed, but refused to participate in any of its subsequent transactions.

It appears, however, that at sometime between Nov. 20, 1897, and May 7, 1898, the Brunswick Electric Railroad Company changed its name to the "Lewiston, Brunswick and Bath Street Railway,"

and on this latter date a "construction contract" was entered into between the Lewiston, Brunswick and Bath Street Railway, by A. H. Shaw, President, and I. C. Libby, Treasurer, and the Lewiston, Brunswick & Bath Street Railway Syndicate, by I. C. Libby, Trustee." As no other syndicate appears to have been formed in connection with the enterprise it is not in controversy that this designation of it had reference to the syndicate formed November 20 under the agreement signed by the defendant Milliken. No evidence was offered to show that Milliken at any time assented to any modification of the original syndicate agreement signed by him or that he or the syndicate ever agreed that I. C. Libby should act as trustee in place of M. G. Shaw, Elias Milliken and J. M. Robbins named as trustees in the syndicate agreement. There was no evidence that I. C. Libby was ever legally authorized to act as trustee for the syndicate for the purpose of entering into this construction contract in question; yet by the terms of this contract with the Lewiston, Brunswick & Bath Street Railway, he assumed to make the syndicate agree to deliver to the Railway Corporation $265,000 of the mortgage bonds of the Lewiston & Auburn Horse Railroad Company; to purchase the power plant in Lewiston used by the Horse Railroad Company; to construct a street railway from Lewiston to Sabattus; to construct and complete the proposed line of the Lewiston, Brunswick & Bath Street Railway from Lewiston to Topsham and from Brunswick to Bath; to construct an electrical power plant in the town of Brunswick sufficient to operate all the lines old and new and to furnish suitable equipment of cars and a car barn; to purchase the Patten car works in the city of Bath and to expend the sum of $2,500 on the buildings; to expend $20,000 in the purchase and improvement of the Merrymeeting Park property; to expend $25,000 for a power station and barn in Lewiston and to advance money to repair and improve all the railway lines in Lewiston, Auburn, Brunswick and Bath. In consideration of all which, the Lewiston, Brunswick & Bath Street Railway agrees to deliver to I. C. Libby the alleged trustee of the syndicate 4800 shares of the capital stock of the Lewiston, Brunswick & Bath Street Railway and $700,000 of its bonds.

It will be seen at once that all of these stipulations which I. C. Libby undertook to make in behalf of the syndicate in the construction contract of May 7, 1898, are a radical departure from the obligations assumed by Milliken in the agreement of Nov. 20, 1897, signed by him. This construction contract and the original syndicate agreement differ toto coelo in their scope and purpose. Milliken agreed to sign notes and advance money to the corporation to the extent specified. He had not agreed to become a member of a different syndicate involving unknown business risks in the construction of railroads. The original scheme involved a maximum personal credit on the part of the syndicate of $385,000. According to the plaintiffs' claim, the construction contract executed by Libby, but repudiated by Milliken involved a personal credit of the syndicate as individuals to the extent of $1,000,000.

Milliken had evidently become alarmed at the proposition thus to remove the express limitations and personal safeguards provided by the syndicate agreement and refused to consent to such an unwarranted extension of the liability of the members of the syndicate. He thereupon withdrew from the syndicate and severed his connection with the enterprise; but although no other syndicate appears to have been formally organized, Milliken's nine associates of November 20, apparently acquiescing in his withdrawal proceeded to formulate a new scheme in entire disregard of the provisions of the syndicate agreement, and under the leadership of I. C. Libby, became committed to the obligations of the construction contract in question, without even the knowledge of the defendant Milliken. In consideration of $5,000 in cash and $3,000 in stock, Milliken might be willing to become one of ten associates who were to loan their credit to the extent of $385,000 in a street railroad enterprise between Lewiston and Bath under an agreement that all the bonds, stocks and securities received as collateral for their credit, were to come into his hands as one of the trustees of the syndicate, but it was a startling change to have his credit pledged for $1,000,000, in a totally different undertaking in which all of the negotiable securities were to be deposited with I. C. Libby as trustee. It was obviously for

that reason that Milliken ignored the syndicate immediately after its creation.

Notwithstanding this practically undisputed history of the syndicate, the plaintiffs offered in evidence at the trial the construction contract of May 7, 1898, for the purpose of showing that the syndicate ultimately performed all of the things agreed to be done under the syndicate agreement and that Milliken was therefore entitled to receive one tenth of the profits of the contract. The presiding judge ruled that the contract was not admissible as evidence against the defendant and the plaintiffs took exceptions to this ruling. But for reasons already sufficiently explained the ruling of the presiding judge excluding the construction contract must be deemed correct. As before shown there was no evidence that I. C. Libby was ever expressly authorized to execute the construction contract in behalf of the syndicate, and he obviously had no greater implied power than that possessed by every other member of the syndicate. If the syndicate is to be termed a copartnership, it must be considered that it was only a special partnership with its scope and purpose explicitly defined and limited and the rights and liabilities of the members carefully guarded by express provisions of the agreement under which the syndicate was constituted. If therefore I. C. Libby as a member of the syndicate had implied authority to bind his nine associates under any circumstances, it is plain he had no implied power to sign the syndicate name to a construction contract involving important duties and extensive liabilities not specified or contemplated by the syndicate agreement and manifestly not within the scope and purpose of it. Neither were the new matters in the contract of May 7, necessary or incidental to the performance of the contract of Nov. 20, or among "extensions that were agreed to later" by the defendant Milliken.

It was not claimed that Libby had any implied power as treasurer to bind the syndicate, and his express powers as treasurer were limited by the written agreement to the negotiations of the syndicate notes, the custody of their proceeds and their disbursement as therein specified. The construction contract therefore was not admissible

without evidence tending to prove Milliken's assent or ratification and no such evidence was introduced or offered.

But it appears from the report of the case that by subsequent rulings of the court full opportunity was given to the plaintiffs to prove everything that was in fact done by the syndicate, either with or without the participation of Milliken, either under the contract of Nov. 20, or the construction contract of May 7. Under these rulings they were expressly permitted to show that Milliken "actually participated in the result of the construction contract," but no such evidence was introduced or offered.

Furthermore no evidence was introduced or offered to prove the allegations in the writ that the plaintiffs ever delivered or offered to deliver or were ready and willing to deliver to the defendant the thirty shares of the capital stock of the corporation, or that they ever paid, or offered to pay the $5,000 in cash, or that they duly protected him against loss by reason of his becoming a member of the syndicate, according to the stipulation of the agreement in suit.

But for the purpose of showing the amount of profits alleged to have accrued to the syndicate from the completed enterprise and as bearing upon the question of damages in this action, the plaintiffs offered in evidence the account book of I. C. Libby, as treasurer, kept in the handwriting of his confidential clerk, showing the amounts claimed to have been received and disbursed by him as treasurer of the syndicate. As stated by plaintiffs' counsel this book was offered "to prove the dispositions and the sale of the stock and bonds committed to him as treasurer of that syndicate." The presiding judge ruled that the book was not admissible for that purpose and accordingly excluded it and ordered a nonsuit. To these rulings the plaintiffs also took exceptions and insist on these exceptions in argument.

It has been seen that by the express terms of the syndicate agreement I. C. Libby was "agreed to as treasurer" with special authority to negotiate all notes issued by the trustees. He was thus made treasurer of the syndicate, and with respect to syndicate business, of every individual member of the syndicate. In addition to the express authority to negotiate the notes issued by the trustees he was invested

with implied authority to perform the duties ordinarily pertaining to the office of treasurer. The receipt and disbursement of moneys and the keeping of a suitable book of accounts showing in detail all of such receipts and expenditures, are among the most obvious of these duties. For both of these purposes every member of the syndicate in signing ·the agreement constituted I. C. Libby his agent. The treasurer's book offered in this case has been produced for the inspection of the court. The entries were shown to have been made in the regular course of business and were duly authenticated by the testimony of the clerk who made them. The book was admissible evidence for the purpose for which it was offered in this proceeding against a member of the syndicate, involving a question respecting the profits of its business; but it is not claimed in behalf of the plaintiffs that the book contains any entries that would be material upon the question of defendant's liability. Its relevancy is confined solely to the question of damages. It contains no entries tending to show that the defendant Milliken actually received any of the profits alleged to have been received from operations under the syndicate of November 20 or the construction contract of May 7. It affords no evidence that the plaintiffs ever delivered or offered to Milliken the thirty shares of the stock of the corporation or paid or tendered to him the $5,000 in cash, or protected him from loss according to the terms of their agreement.

If therefore the construction contract of May 7, and the treasurer's account book in question had been admitted as evidence, it would still have been the duty of the court to order a nonsuit for want of proof of the several propositions essential to establish the defendant's liability. As already seen the plaintiffs had full opportunity under the rulings of the court, to introduce evidence to prove all of the material allegations respecting the defendant's liability, but failed to present sufficient evidence to make out a prima facie case against him. Under these circumstances as it was not shown that the defendant was liable for any damages at all, the treasurer's account book relating solely to the question of damages, was entirely immaterial, and as the case was tried the plaintiffs were not aggrieved by the exclusion of this evidence. It was incumbent upon the plaintiffs

to show affirmatively that they were aggrieved by the ruling complained of. *Littlefield* v. *Cook*, 98 Maine, 299; *Freeman* v. *Dodge*, 98 Maine, 531; *Copeland* v. *Hewett*, 96 Maine, 525; *Look* v. *Norton*, 94 Maine, 547. This the plaintiffs have failed to do, and the entry must be,

*Exceptions overruled.*